**FILED**

**March 10, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 1:04 PM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MURFREESBORO

| | | |
|---|---|---|
| **DOUGLASS BOLDEN, II,** | ) | **Docket No.: 2016-05-1033** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 50919-2016** |
| | ) | |
| **LOWE'S HOME CENTERS,** | ) | **Judge Robert Durham** |
| **Self-Insured Employer.** | ) | |

---

## EXPEDITED HEARING ORDER DENYING BENEFITS

---

This cause came before the undersigned Workers' Compensation Judge on March 1, 2017, upon the Request for Expedited Hearing filed by Douglass Bolden, II. The central legal issue is whether Mr. Bolden came forward with sufficient evidence to establish he is likely to prevail in proving his current physical restrictions and need for additional medical treatment are primarily related to a work-related incident to his knees and left ankle occurring on July 1, 2016. Secondary issues include whether Mr. Bolden is entitled to temporary disability benefits, and if so, to what extent, as well as reimbursement for medical expenses.

The Court holds Mr. Bolden's aggravation or re-injury of his left ankle while vacationing in Canada constituted an independent intervening cause that broke the causal chain between his work-related injury to his left ankle on July 1 and his need for an orthopedic referral as well as his inability to continue working at Lowe's. However, he is still entitled to any treatment to his knees causally related to his work-related injury on July 1, 2016.

### History of Claim

Mr. Bolden has worked for Lowe's for thirteen years, primarily as a delivery person, delivering everything from appliances to lumber for Lowe's customers.[1] He testified that in the days leading to July 1, 2016, he had been extremely busy and

---

[1] The parties stipulated Mr. Bolden's wage rate is $801.68.

1

developed significant pain in both knees, so that he found it difficult to kneel. In addition, while moving a refrigerator onto a dolly on Friday, July 1, he felt his left ankle "give," resulting in immediate pain. Mr. Bolden finished his shift and went home.

According to Mr. Bolden, he was off work the next day, and he woke up in severe ankle pain the next morning. By noon, his ankle was significantly swollen. On Sunday, his wife drove him to Lowe's, where he informed his manager, Tim Green, that he had suffered an injury to his left ankle. They agreed he would take a few days off to see if it improved. Mr. Bolden testified that he thought he made it clear to Mr. Green that he was asserting he sustained the ankle injury while moving a refrigerator. However, an email dated that same day from Mr. Green to Holly Seay, Human Resource Manager for Lowe's, states he asked Mr. Bolden repeatedly how it happened, and he told him it was due to "working hard on delivery," but he did not twist it during a delivery. (Ex. 14.) However, Ms. Seay testified she had no reason to doubt Mr. Bolden when he said he hurt his ankle while moving the refrigerator.

Mr. Bolden's ankle did not improve, and he returned to Lowe's the following day and chose Dr. John Salyer, who also happened to be his long-time personal physician, from a panel to provide authorized care. He saw Dr. Salyer on July 5 and, according to Dr. Salyer's notes, told him he did not recall a specific injury but was suffering from pain and tingling in his left ankle and knees from going up and down stairs, lifting, pushing, walking and standing. On exam, Dr. Salyer noted some swelling on the lateral aspect of Mr. Bolden's left ankle as well as some tenderness and swelling bilaterally over the patellar tendons. X-rays of the knees and the ankle were normal. (Ex. 10 at 9, 12.)

Dr. Salyer diagnosed Mr. Bolden with a ligament sprain in his left ankle and patellar tendinitis in both knees. He gave Mr. Bolden restrictions against lifting more than twenty-five pounds, no squatting or kneeling, and no climbing steps. *Id.* at 12, 13. Ms. Seay testified that Lowe's could and would have accommodated those restrictions, but Mr. Bolden opted to take sick leave at one hundred percent of his pay instead. A week later, Dr. Salyer noted Mr. Bolden claimed some improvement until he tried to use his ankle that weekend. He continued Mr. Bolden's restrictions and ordered an MRI, which revealed "chronic Achilles tendinosis with surrounding soft tissue edema." There was no evidence of an Achilles tendon tear. *Id.* at 15, 16. Dr. Salyer never provided Mr. Bolden with pain medication, but Mr. Bolden testified he told him he did not want it. He also never provided Mr. Bolden with a cast or walking boot, but Mr. Bolden testified he would occasionally wrap his ankle with an Ace bandage. *Id.* at 18.

Lowe's required Mr. Bolden to return to work on July 26 as a cashier, which allowed him to work while seated and stay within Dr. Salyer's restrictions. On August 9, he returned to Dr. Salyer, who noted Mr. Bolden's symptoms were improving, although he still had a "little pain" along the lateral aspect of his left ankle if he "overworked" it. *Id.* at 17. Dr. Salyer continued Mr. Bolden's restrictions, but stated he expected to

release him back to full-duty when he returned on September 1. *Id.* at 17, 18.

Soon thereafter, Mr. Bolden took a planned vacation to Alberta, Canada with his wife, who is from there. For a few days, his in-laws drove him around the Rockies to various tourist sites while they camped in an RV. Mr. Bolden testified that, at this time, his ankle did not prevent him from walking and standing for short periods, approximately thirty minutes to an hour, but he continued to have discomfort in his ankle, and the more stress he placed on his ankle, the more pain and swelling he would experience.

During the trip, Mr. Bolden and his family stopped at a roadside trailhead to walk to a waterfall. Mr. Bolden testified the trip was along an undulating, well-worn trail consisting primarily of dirt, grass and rocks with no steep slopes or steps. Depending on how long one lingered to see the sights, he estimated the walk to the falls took from five to fifteen minutes. On his way to the falls, he stepped off the main trail to cross the nearby stream by stepping on rocks jutting out of the water. As he pushed off one rock with his left foot in order to place his right foot on the next rock, he felt a sharp pain in his left ankle. Mr. Bolden completed his journey across the stream and then returned. After getting back on the main path, they viewed the waterfall and then walked back. Mr. Bolden testified he had difficulty returning to their car and he was compelled to walk behind his family. After returning, he noticed his ankle was swelling and he wrapped it in an Ace bandage.

Upon his return to Tennessee, Mr. Bolden went to see Dr. Salyer. Dr. Salyer noted Mr. Bolden told him he had been "doing well," but when he pushed off the rock, the pain recurred with the same intensity he had when he first injured it in July. Dr. Salyer noted Mr. Bolden suffered pain with weight-bearing and, for the first time, observed bruising on the lateral side of his foot, which indicated a sprain. At that point, he recommended an orthopedic referral and indicated Mr. Bolden required a job that would allow him to stay off his feet with his left foot elevated. *Id.* at 20-25.

Mr. Bolden returned to Lowe's. Ms. Seay testified Mr. Bolden told her he hurt his ankle when he pushed off a rock while hiking in Canada and she noticed severe bruising around his ankle that had not been present before. On September 26, Lowe's asked Dr. Salyer for clarification regarding Mr. Bolden's restrictions, who informed them that he recommended a sedentary job "as much as possible" and it would be six months before he could return to his essential job functions. (Ex. 8.) Upon receipt of Dr. Salyer's restrictions on October 4, Lowe's informed Mr. Bolden that it could not accommodate sedentary job restrictions. On October 7, Lowe's denied Mr. Bolden's workers' compensation claim, stating the injury did not arise out of his employment. (Ex. 3.) A few days later, Dr. Salyer provided a note to Lowe's stating Mr. Bolden should continue working as a cashier "for now." (Ex. 8.) Mr. Bolden did not return to work and exhausted his sick leave with Lowe's on October 26. Mr. Bolden testified he has not worked anywhere since Lowe's informed him it could not accommodate his restrictions.

3

On December 21, Lowe's requested that Mr. Bolden provide updated restrictions from Dr. Salyer; however, Mr. Bolden testified he thought the form Lowe's sent him was merely a duplicate of one previously provided and did not forward it to Dr. Salyer. On December 19, Dr. Salyer responded to a letter from Mr. Bolden's counsel regarding causation, stating Mr. Bolden's need for orthopedic treatment and temporary disability benefits arose primarily from his employment. (Ex. 5.) Mr. Bolden's counsel provided this letter to Lowe's, and on January 3, 2017, Mr. Bolden received a panel of orthopedists from Lowe's. However, Lowe's refused to deem Mr. Bolden's claim as compensable; therefore, he has not chosen an orthopedist from the provided panel.

The parties subsequently took Dr. Salyer's deposition. Dr. Salyer testified that, prior to Mr. Bolden's hiking incident, he had been improving and he had anticipated Mr. Bolden would be able to return to full duty in September. (Ex. 10 at 18.) He further testified the incident caused an aggravation of Mr. Bolden's condition, which led to his orthopedic referral and increased restrictions, although he made the restrictions on the assumption that an orthopedist would soon be taking over Mr. Bolden's care. *Id.* at 35, 94-95. However, with regard to causation, Dr. Salyer refused to consider the July episode and the September episode in isolation:

A: I'm not sure that in the whole process of all this I have tried to separate it out into two incidents.

Q: That you have or have not?

A: He had an injury July 1st, and we had some work restrictions and limitations on what he could and could not do. And he was progressing, and then in September, he had the ankle injury or reinjured the same ankle pushing off a rock, and then I got this form to fill out. But I was viewing this all going back to the whole process that started on July 1st.

(Ex. 10 at 28.)

After extensive questioning by both parties, Dr. Salyer reiterated his opinion as to causation:

Q: … [A]re you still of the opinion that at least 51 percent of his condition is due to the July 1, 2016 injury?

A: Yes.

Q: And would you be – are you convinced that his current need for treatment is due to that July 1, 2016 injury?

4

A:    Yes.

*Id.* at 85.

### Findings of Fact and Conclusions of Law

As in all workers' compensation actions, Mr. Bolden, as the claimant, has the burden of proof on the essential elements of his claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, since this is an expedited hearing, he only has to come forward with sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits in order to meet his burden. *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

In order to establish causation, an employee must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2016). The term "reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2016).

While there is some question as to whether Mr. Bolden notified Lowe's he had sustained an injury to his left ankle and suffered pain in his knees on July 1, 2016, the Court considers his account sufficiently consistent with the record to find his testimony credible. Moreover, Ms. Seay testified she had no reason to doubt Mr. Bolden's account, and Dr. Salyer found his physical condition to be consistent with a work-related injury on July 1. Lowe's never denied benefits on the basis that he did not suffer a work-related injury on July 1. As a result, the Court holds Mr. Bolden is likely to prevail at a compensation hearing in establishing he sustained an injury on July 1, 2016, that arose primarily out of and in the course and scope of his employment with Lowe's.

However, the question remains whether Lowe's is obligated to pay for Dr. Salyer's recommendation that an orthopedist evaluate Mr. Bolden, as well as pay temporary disability benefits because it could not accommodate his increased physical restrictions following the incident that occurred while he vacationed in Canada. In order to answer that question, the Court must determine whether the incident in Canada constituted an "independent, intervening cause" that broke the causal connection between Mr. Bolden's July 1 accident and his continuing disability. *Anderson v. Westfield Grp.,* 239 S.W.3d 690, 697 (Tenn. 2008.)

In *Anderson,* the employee injured his left arm, resulting in numbness in two

5

fingers. One day while cooking, he dropped a skillet and placed his left hand on the stove in order to balance himself as he reached down to the floor to pick up the skillet. When he did so, he inadvertently put his numb fingers on a stove-eye, burning them severely. In analyzing whether the burn was compensable, the Supreme Court considered the "well-established" general rule that a subsequent injury, whether it is "an aggravation of the original injury or a new and distinct injury, is compensable if it is the 'direct and natural result' of a compensable injury." *Id.* at 696. The "direct and natural consequences rule" is "when the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment.'" *Id.* (Citations omitted.)

However, the "direct and natural consequences rule" has its limits. The *Westfield* Court held that a natural consequence is compensable *unless* the independent intervening cause is non-work related and results from the negligence of the injured employee. *Id.* at 699. Negligence is defined as "simply the failure to use reasonable care under the circumstances." *Id.* at 698. Using this analysis, the *Westfield* Court found that the employee was aware of his limitations given that he knew he had no sensation in his fingers, and despite this fact, failed to watch where he put his hand while bending over to pick up the skillet. Thus, he failed to exercise due care, and "the responsibility for the accident and its consequences could not be fairly ascribed to his original compensable injury." As a result, the *Westfield* Court denied the employee's claim for benefits for injuries resulting from his burned fingers. *Id.* at 700. Thus, in this matter, the Court must determine whether Mr. Bolden "failed to exercise due care under the circumstances" when he aggravated or re-injured his ankle in Canada and required increased restrictions as well as an orthopedic referral.

Mr. Bolden's testimony indicated that, although he still "catered to his ankle" and suffered from pain and occasional swelling in it, it was improving. He was able to stand and walk on it for thirty minutes to an hour at a time while in Canada. It did not prevent him from traveling to Canada and engaging in extensive sight-seeing during his trip. Before the waterfall incident, he was not wearing any type of support for his ankle, including his Ace bandage. Neither the vacation nor the sight-seeing trip to that point appears to have been unduly strenuous or rash. If the incident occurred during a "five-minute walk" on a "well-worn path" as described by Mr. Bolden's counsel in the pre-hearing statement, the Court would be inclined to find that Mr. Bolden did not fail to exercise due care under the circumstances.

However, the testimony simply does not bear out counsel's description. It is clear to the Court that, rather than stay on the "well-worn path," Mr. Bolden elected to cross a stream while stepping from rock to rock in such a fashion that he had to "push off" with his left foot to reach the next rock or risk falling in the water that was running on either side. He chose to do this despite the fact that he still suffered from pain, weakness and swelling in his ankle, particularly when he placed it under increased stress. The Court

6

finds that such behavior under the circumstances was a "failure to exercise due care" for his work-related injury, and thus constituted negligence.

In her pre-hearing statement, Mr. Bolden's counsel pointed out that Dr. Salyer testified he still believed the July 1 incident caused at least "51 percent" of Mr. Bolden's condition. (T.R. 4.) While true, the Court finds Dr. Salyer's opinion is based on a "but for" analysis, in that the injury was a "continuum," and if Mr. Bolden had not hurt his ankle in July, he would not have hurt it while crossing the stream in Canada. While perhaps accurate, it does not change the analysis as to whether Mr. Bolden's conduct in Canada was an "independent intervening cause." The same can be said for the employee in *Westfield*, in that if he had not suffered work-related nerve damage to his fingers, he would not have burned them, but that did not convince the Supreme Court to find the injury compensable. *Westfield*, at 700.

Therefore, the Court holds Mr. Bolden's negligence rendered him unable to establish he is likely to prevail at a Compensation Hearing in proving a causal relation between his work-injury of July 1, 2016, and his need for an orthopedic referral and temporary disability benefits resulting from his inability to work due to increased restrictions.

Regarding temporary disability benefits for the time Mr. Bolden was off-work from July 5 through July 26, the Court finds Lowe's could and would have accommodated Mr. Bolden's restrictions, but he voluntarily chose not to work with accommodations. Instead, he decided to take sick leave and receive one hundred percent of his wages. Thus, he is not entitled to temporary disability benefits for that period.

The Court further holds that the "independent intervening cause" only affected Mr. Bolden's ankle, not his knees. Thus, he is entitled to additional medical treatment from Dr. Salyer as the authorized physician for any work-related injury to his knees incurred on July 1, 2016. However, this does not entitle him to any temporary disability benefits at this time given that the sedentary restrictions that led to his inability to work were due to the need to keep his ankle elevated and avoid weight bearing as much as possible to give the ankle time to heal. He is not entitled to reimbursement for medical expenses incurred subsequent to the September visit since there is no evidence the treatment provided, if any, was for anything other than his ankle.

**IT IS, THEREFORE, ORDERED** as follows:

1.   Mr. Bolden's request for an orthopedic referral, temporary partial disability benefits and reimbursement for medical expenses is denied. However, Lowe's shall authorize Dr. Salyer to provide reasonable and necessary treatment for any injury Mr. Bolden sustained to his knees primarily arising out of and in the course and scope of his employment with Lowe's on July 1, 2016.

7

2.    This matter is set for a Scheduling Hearing/Status Conference on May 3, 2017, at 9:30 a.m. C.T. The parties must call 615-253-0010 or toll-free at 866-689-9049 to participate in the Hearing.  Failure to call in may result in a determination of the issues without your further participation.

**ENTERED THIS THE  DAY OF MARCH, 2017.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:

1.    Notice of Filing Wage Statement
2.    Affidavit of Douglass Bolden
3.    Notice of Denial
4.    Wage and Work Schedule Information
5.    Questionnaire to Dr. John Salyer with completed response
6.    Note from Dr. Salyer dated October 11, 2016
7.    Note from Dr. Salyer dated September 1, 2016
8.    Medical bills
9.    Picture of Mr. Bolden's foot
10.   Deposition of Dr. Salyer
11.   Panel of physicians sent by Lowe's
12.   Medical Bills
13.   Pictures from Canada
14.   Accommodation Request Assessment Form
15.   E-mail from Nick Green

Technical Record:

1.    Petition for Benefit Determination
2.    Dispute Certification Notice
3.    Request for Expedited Hearing
4.    Mr. Bolden's Pre-Hearing Statement
5.    Mr. Bolden's Amended Pre-Hearing Statement w/ attached cases

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Order was sent to the following recipients by the following methods of service on this the 10 day of March, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Constance Mann | | | X | cmannlaw@msn.com |
| Kenneth Veit | | | X | Kenny.Veit@leitnerfirm.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

9